**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BERNDETTA HOWARD,** | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **CIVIL ACTION NO. 13-0247-KD-N** |
| **WILLIE HUDSON, *et al.*,** | ) |
|     **Defendants.** | ) |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 30-33, 35), Plaintiff's opposition (Docs. 39-40) and Defendants' reply (Doc. 45); and Defendants' motions to strike (Docs. 43, 44) and Plaintiff's opposition (Doc. 47).

**I.**    <u>Background</u>

This case concerns Plaintiff Berndetta Howard ("Howard") and her son Brandon Robinson ("Robinson"), and the events surrounding his 2012 arrest in Greensboro, Alabama, which resulted in Howard's arrest for disorderly conduct and resisting arrest.

On May 7, 2012, Greensboro Officer Eugene Lyles ("Lyles") came to Howard's place of business and informed her that she and her son Robinson needed to appear at city hall due to a complaint about Robinson having discharged a firearm within the city limits on May 6, 2012. (Doc. 31-1 (Arrest Report); Doc. 31-2 (Aff. Hudson); Doc. 31-3 (Aff. Hamilton); Doc. 31-4 (Aff. Lyles); Doc. 40-1 (Decltn. Howard)). Howard and Robinson arrived at city hall and were met by Officer Lyles who read Robinson his Miranda rights; Robinson admitted to discharging a firearm without a permit in the city limits. (<u>Id</u>.) Shortly thereafter, Chief Willie Hudson ("Chief Hudson) and Assistant Chief Michael Hamilton ("Hamilton") arrived. (<u>Id</u>.) Chief Hudson and Howard met and talked, and Robinson was allowed to bond out and was released from custody

on the condition that he bring the firearm to the police department the next day, May 8, 2012, or have his bond revoked.  (Id.)  On May 8, 2012, Robinson -- along with his two (2) year old son Isaiah Robinson, Howard (his mother), and his uncle (State Representative Ralph Howard, Howard's brother) -- took a firearm to the Greensboro police station to meet with police officers to discuss the return of the discharged firearm. (Doc. 1 (Complaint); Doc. 31-1 (Arrest Report)).[1]

The facts of the case, beyond this point, are vehemently disputed.  With specific respect to the resolution of a motion for summary judgment based on qualified immunity and Section 1983 – as is the case here -- the Eleventh Circuit has declared:

> …. we approach the facts from the plaintiff's perspective … "[t]he issues appealed here concern … whether or not certain given facts showed a violation of clearly established law." …. the "facts, as accepted at the summary judgment … may not be the actual facts[]" …. for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the plaintiff ….

McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009). "At this juncture, we outline the [plaintiff's] version of the events." Hawkins v. Carmean, 562 Fed. Appx. 740 (11th Cir. 2014).[2] Howard's version thus follows.

The meeting commenced in Chief Hudson's office.  While discussing Robinson's crime, Howard's brother told the Chief that any personal animosity between them should not influence his investigation (they are members of opposing political factions in Greensboro).  (Doc. 1 at 3-4; Doc. 40-1 (Decltn. Howard)).  Howard's brother added: "I could have come here to curse you

---

1 Robinson was stabbed in 2007, suffering life threatening injuries, by an individual named Ryan Washington who was later imprisoned for attempted murder.  (Doc. 31-9 (Dep. Howard at 13-14)). Washington was paroled in 2012 with 5 years probation.  (Id.; Doc. 40-1 (Decltn. Howard)). Howard alleges that she also went to the police station that day to discuss Washington's harassment and threatening of Robinson (during Washington's trial and after his release from prison).  (Doc. 1 at 3; Doc. 40-1 (Decltn. Howard)).  Robinson allegedly discharged the firearm in the presence of Washington and others.  (Id.; Doc. 31-9 (Dep. Howard at 294-295)).

2 See also e.g., Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (same); Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000) (same).

out but I didn't." (Doc. 40-1 (Decltn. Howard)). In response, Chief Hudson leapt from his chair into Howard's brother's face, pointing his finger in his face, touching his nose, and screaming. (Id.) At this point, Howard became involved.

Specifically, Howard, holding her two (2) year old grandson, stood up and stepped between the men to act as a peacemaker (without touching Chief Hudson), telling Chief Hudson he did not have to put his hands in her brother's face. (Id.; Doc. 31-9 (Dep. Howard at 287)). Chief Hudson pushed Howard on her shoulder with both of his hands with such force that she and her grandson fell to the ground and her grandson was knocked out of her arms, but Chief Hudson continued arguing with Howard's brother. (Doc. 40-1 (Decltn. Howard); Doc. 40-3 (Dep. Howard at 286-287); Doc. 31-9 (Dep. Howard at 278-281)). Howard got up from the floor, checked her grandson for injuries, and again tried to break the men apart. (Doc. 40-1 (Decltn. Howard)). Howard told Chief Hudson he did not have to put his hands on either she or her brother and Chief Hudson pushed Howard a second time. (Id.; Doc. 31-9 (Dep. Howard at 280-282)). At that point, seeing that they were "getting nowhere" Howard and her brother turned to leave and Howard asked for her shoe (which she had apparently lost during the exchange) which was kicked to her by Municipal Court Magistrate Singleton, who was also present. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Dep. Howard at 287)).[3]

Howard and her brother prepared to leave, with Howard protesting that Chief Hudson had assaulted her. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Dep. Howard at 286)). Assistant Chief Hamilton took Howard's crying grandson out of the office. (Doc. 40-1 (Decltn. Howard)). Then Chief Hudson, using "his size and strength to try and subdue her[,]" grabbed and began twisting

---

[3] Chief Hudson said to Office Lyles "cuff Brandon [Robinson]" and he was escorted out of the building at some point. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Decltn. Howard)).

Howard's arm. (Doc. 1; Doc. 40-1 (Decltn. Howard)). Howard told Chief Hudson to "turn my goddamn arm loose[,]" but he would not. (Doc. 40-1 (Decltn. Howard)). At this point, Chief Hudson had not told Howard that she was under arrest. (Id.) Magistrate Singleton instructed Chief Hudson to use "this" referencing his belt, and Chief Hudson had what appeared to be two (2) firearms on his belt. (Id). Howard was afraid and more irate, asking "Red [Chief Hudson] are you going to shoot me over this[,]" to which Magistrate Singleton said "no but he needs to Taser you." (Id.) Chief Hudson told Howard he was going to Taser her. (Id.; Doc. 31-9 (Dep. Howard at 303)).

Howard continued to struggle with Chief Hudson as the pressure to her arm was causing "excruciating pain" but he refused to stop. (Doc. 40-1 (Decltn. Howard)). At this point, Chief Hudson had still not informed Howard that she was under arrest. (Id.) Howard did not threaten him nor attempt to bite him, but "begged him to release" her. (Id.) Chief Hudson continued to "manhandle" her, and then dragged her from the back of the police department to the front (through city hall) and pushed her into a city employee's desk making her hit her head on a computer screen. (Id.) Chief Hudson continued to drag her again by her right arm and during the struggle Howard then fell into the desk of Lorrie Cook (a city employee), knocking objects to the floor. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Dep. Howard at 258)). With this, Howard fell to the floor landing flat on her back, hitting her head again on a desk on the way down. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Dep. Howard at 123, 266-268)). See also (Doc. 31-5 (Aff. Singleton); Doc. 31-7 (Aff. Cook)). Chief Hudson, who was still holding onto her arm, fell on her stomach with his knee between her legs. (Id.) At this point, Howard told Chief Hudson that she was going to "de-crotch" him. (Doc. 31-9 (Dep. Howard at 251, 261, 304)).

For the first time during the entire encounter, Chief Hudson told Howard she was "going to jail." (Doc. 40-1 (Decltn. Howard)). Howard responded "no," "but I will go with Deputy [Enoch] Rose[]" (whom she trusted and with whom she felt safe). (Doc. 40-1 (Decltn. Howard)). Howard also began cursing Chief Hudson and telling him that he was hurting her. (Doc. 40-1 (Decltn. Howard); Doc. 31-9 (Dep. Howard at 258)). Around this time, 911 was called. (Doc. 31-5 (Aff. Singleton); Doc. 35 (Audio Recording of 911 calls)). Howard heard Chief Hudson tell Assistant Chief Hamilton to get his handcuffs. (Doc. 31-9 (Dep. Howard at 123)). "Hamilton told … [Howard that] he walked out the door, and he wasn't coming back with no handcuffs, because what he [Chief Hudson] did was wrong." (Id.) After Deputy Rose arrived at the scene, she helped Howard up, handcuffed one of her hands, and escorted her out of city hall to jail where she remained in a holding cell for 3½ hours. (Id.; Doc. 31-9 (Dep. Howard at 123, 131, 134)).

Howard was admitted to the ER at Hale County Hospital where she claims to have incurred over $10,000 in bills. (Doc. 1 at 5). Howard was treated for a sprained arm and a neck bruise, and head soreness from hitting the desk. (Doc. 31-9 (Dep. Howard at 164, 187)). Howard was later treated by her chiropractor who concluded she had swollen shoulders and prescribed pain medicine. (Id. (Dep. Howard at 188)). Howard was ultimately charged with disorderly conduct and resisting arrest, was tried in Greensboro Municipal Criminal Court on November 15, 2012, and was convicted. (Doc. 31-10; Doc. 31-11 at 11-12). Howard appealed her conviction by paying $1,388 to Municipal Magistrate Singleton, to the Hale County Circuit Court. (Doc. 40-1 (Decltn. Howard)). After paying her fee she periodically contacted the Greensboro Circuit Court clerk and asked whether "the money had been transferred" and was repeatedly told "no." (Id.) In December 2013, Howard was contacted by the Clerk of the City of

Greensboro, Lorrie Cook, who told her to pick up her appellate filing fee. (Id.) Per Howard, Magistrate Singleton had not processed her appeal payment. (Id.)

On May 1, 2013, Howard filed a Section 1983 complaint against Chief Hudson (in his individual and official capacities) for excessive force, assault and battery (also under state law citing Ala. Code § 6-5-370), false arrest, and denial of due process; and against the City of Greensboro, Alabama ("the City") for denial of due process, and for the state law claims of negligent training, supervision and retention. (Doc. 1). Howard claims physical injuries, mental anguish, and emotional distress from "Chief Hudson's unprovoked attack." (Id.) Howard asserts injuries to her back, neck, and right arm, for which she continues to receive treatment. (Doc. 40-1 (Decltn. Howard)). Howard also asserts that her grandson remains afraid when he sees law enforcement, due to having witnessed Chief Hudson's actions. (Id.)

## II. **Motions to Strike**

The Defendants filed motions to strike the deposition of Morris Polion ("Polion") and the Declaration of Howard, to which Howard has responded. (Docs. 43, 44, 47). With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, motions to strike submitted on summary judgment are no longer appropriate. Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify as follows:

> "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. *There is no need to make a separate motion to strike.* If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial."

Fed.R.Civ.P. 56, *Adv. Comm. Notes*, "Subdivision(c)" (2010 Amendments) (emphasis added). As such, the Court construes the Defendants' motions as Objections, to be overruled or sustained.

## A. <u>Deposition of Morris Polion</u> **(Doc. 40-2)**

Howard relies upon six (6) pages of the deposition of former Greensboro police officer Morris Polion,[4] as taken in another case in this Court (also against Chief Hudson), <u>Polion v. City of Greensboro, et al,</u> CV 13-00244-WS-M (S.D.Ala.). Howard asserts that Defendants' summary judgment as to her Section 1983 claim against the City should be denied as per Polion, "Chief Hudson's repeated and unlawful use of excessive force when dealing with Greensboro citizens was well known by the Mayor and some of the elected officials." (Doc. 39 at 2).

At the outset, Howard submitted the entirety of the deposition. However, *Howard exclusively relies upon six (6) pages of the deposition* (Pages 40-41, 60-61, 150-151). (Doc. 39 at 22). Thus, the remaining pages are simply irrelevant and have not been considered on summary judgment. As such, it is **ORDERED** that the Defendants' Objection is **MOOT** as to the remaining pages of Polion's deposition.

Concerning the six (6) pages relied upon by Howard, Polion testified that he believes that the Greensboro police department treated its citizens unjustly and unlawfully with intimidation, and that the Assistant Chief "advised him" of such mistreatment. (<u>Id</u>. (Dep. Polion at 40-41)). Polion testified that he witnessed incidents when Chief Hudson used a flashlight to hit citizens he

_____

4 Polion was employed by the Greensboro Police Department as a police officer but was terminated in July 2012 after complaining about Chief Hudson's actions to the mayor and councilmembers. (Doc. 40-2 (Dep. Polion at 16, 24-25, 44, 48-49)). Apart from simply obtaining this information about who Polion is (as Howard did not indicate as such) the Court did not read the remaining pages of the deposition as Howard does not rely on same.

was trying to arrest and/or during fights he was trying to break apart – he engaged in "aggressive handling of people[]" in Greensboro. (Id. (Dep. Polion at 60-61, 150-151)).

In objection, the Defendants contend that Howard violated the <u>Federal Rules of Civil Procedure</u> because Polion was never disclosed as a witness until summary judgment, preventing the Defendants from conducting any discovery as to him or deposing him as to Howard's specific claims. The Defendants add that while it was aware of Polion's identity as a City employee and that his deposition testimony (upon which Howard relies) was provided in another case in this Court, <u>Polion v. City of Greensboro, et al,</u> CV 13-244, the City's current counsel was not involved in that case and Howard's failure to disclose him as a witness in this case as well and his knowledge as to her claims, violates Rule 26. The Defendants argue that Howard's failure to disclose cannot be considered substantially justified or harmless under Rule 26 or Rule 37. However, the Defendants simultaneously admit that it listed Polion as a witness regarding the "facts and circumstances of Berndetta Howard's criminal behavior on May 8, 2012" as he was the officer who filed the incident/offense report on Howard's disorderly conduct charge. Even so, the Defendants contend that such should not change the Court's analysis as the City never received any notice that Howard would or might offer testimony from Polion to support *her* claims. Additionally, the Defendants generally contend that Polion's deposition contains hearsay, lacks evidentiary foundation and/or personal knowledge, and contains inadmissible/irrelevant information.

Upon consideration, the Defendants cannot claim surprise or failure to disclose a witness that it designated itself, and/or assert such simply because Howard intends to use that witness to try to bolster her case. Additionally, one of the attorneys for the City was counsel in the <u>Polion</u> case, which provided access/knowledge of the contents of Polion's deposition. As for a lack of

personal knowledge, Polion testified to personal knowledge of the events on the six (6) pages (as he was present).  Concerning hearsay, inadmissible hearsay may be considered on summary judgment provided that such hearsay could be reduced to admissible form at trial. Hosea v. Langley, 2006 WL 314454, *8 (S.D. Ala. Feb. 8, 2006); Jones v. UPS Ground Freight, 683 F. 3d 1283, 1293-1294 (11th Cir. 2012); Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999).

Nevertheless, the pages upon which Howard relies concern Polion's testimony about incidents he witnessed as to Chief Hudson, and *other* individuals (individuals *unrelated* to this case).  Additionally, the pages do not support Howard's conclusory assertion that "Chief Hudson's repeated and unlawful use of excessive force when dealing with Greensboro citizens was well known by the Mayor and some of the elected officials[.]"  Rather, the pages reveal Polion's personal beliefs; that former Assistant Chief Coates possibly knew about Chief Hudson's actions; that he witnessed incidents where Chief Hudson used a flashlight to hit citizens.  These pages do not mention the Mayor and/or other elected officials, nor do they establish that Chief Hudson was "repeatedly acting unlawfully using excessive force."  Thus, while the Court overrules the objection, the Court also finds the testimony to be minimally relevant.

**B.**     <u>**Declaration of Berndetta Howard (Doc. 40-1)**</u>

The Defendants contend that Howard's declaration contains hearsay, legal conclusions, lacks evidentiary foundation and/or personal knowledge, contains irrelevant information and conclusory statements. The Defendants move for the Court to sustain its objections to Paragraphs 1-5, 10-17, 20, 23, 24, and 28-29 under <u>Federal Rules of Evidence</u> 401, 602, 701, 802.

Regarding the specific paragraphs objected to – to which Howard has declared under penalty of perjury are true and correct and made "based on facts personally known to me[:]"

1: Howard's statement that she was "*falsely* arrested, assaulted and battered" is argument and/or a legal conclusion and so the Defendants' objection to that portion of the paragraph is sustained, but the other objections are overruled.

2: Howard has personal knowledge of what she said because she said it and of what she experienced because she experienced it, as well as her opinion of how local law enforcement handled her reports and complaints about threats to her son, so the Defendants' objections are overruled. With regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. Hosea, 2006 WL 314454, *8; Jones, 683 F. 3d at 1293-1294; Macuba, 193 F.3d at 1322.

3: Howard has personal knowledge of what she said because she said it and of what she experienced because she experienced it, so the Defendants' objections are overruled. With regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. Hosea, 2006 WL 314454, *8; Jones, 683 F. 3d at 1293-1294; Macuba, 193 F.3d at 1322.

4: Howard has personal knowledge of what she said because she said it and of what she experienced because she experienced it, so the Defendants' objections are overruled. With regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. Hosea, 2006 WL 314454, *8; Jones, 683 F. 3d at 1293-1294; Macuba, 193 F.3d at 1322. As for Officer Lyles' statements, she has personal knowledge because she witnessed it and Officer Lyles is an agent of the City and thus on summary judgment it is allowable under Rule 801(d)(2).[5]

5, 10, 13-15, 17: Howard has personal knowledge of what she said because she said it and of what she experienced because she experienced it, so the Defendants' objections are overruled. With regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. Hosea, 2006 WL 314454, *8; Jones, 683 F. 3d at

---

5 See, e.g., Kidd v. Mando American Corp., 731 F.3d 1196, 1208 (11th Cir. 2013) (discussing a statement made by a human resources director and explaining that Rule 801(d)(2)(D) provides that a statement is not hearsay if it "is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" and that an employees' statement may also be admissible as the statement of a party opponent). Rule 801(d)(2) provides:

**An Opposing Party's Statement.** The statement is offered against an opposing party and:
    **(A)** was made by the party in an individual or representative capacity;
    **(B)** is one the party manifested that it adopted or believed to be true;
    **(C)** was made by a person whom the party authorized to make a statement on the subject;
    **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
    **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

1293-1294; <u>Macuba</u>, 193 F.3d at 1322. As for her brother's statement and Chief Hudson's statement, she has personal knowledge because she witnessed it, her brother's statement can be made admissible at trial through his testimony, and Chief Hudson is both a party and an agent of the City and thus on summary judgment it is allowable under Rule 801(d)(2). <u>See</u> *supra* note 5. The only exception is a portion of for Paragraph 17: as for her statement that "Chief Hudson assaulted and battered me," that is an argument and/or a legal conclusion and the Defendants' objection is sustained as to same.

11, 12: Howard has personal knowledge of same, so the Defendants' objections are overruled.

16: The Defendants' objection to the height and weight of her brother and Chief Hudson is sustained. Howard has personal knowledge of her brother's medical condition and so that objection is overruled (and even if not, this can be made admissible at trial through her brother's testimony). <u>Hosea</u>, 2006 WL 314454, *8; <u>Jones,</u> 683 F. 3d at 1293-1294; <u>Macuba</u>, 193 F.3d at 1322.

20: Howard has personal knowledge of what she said because she said these things, so the Defendants' objection are overruled. As to what Howard says Singleton and Chief Hudson said, she has personal knowledge because she witnessed it. With regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. <u>Hosea</u>, 2006 WL 314454, *8; <u>Jones,</u> 683 F. 3d at 1293-1294; <u>Macuba</u>, 193 F.3d at 1322. Moreover, Singleton is an agent of the City and Chief Hudson is a party and an agent of the City; thus it is allowable under Rule 801(d)(2). <u>See</u> *supra* note 5.

23: These are not inconsistent statements, so the Defendants' objection is overruled.

24: Howard has personal knowledge of what transpired, as well as she said because she said it, so the Defendants' objection is overruled. As for Chief Hudson's statement, she has personal knowledge because she witnessed it, and with regard to any hearsay objections, a court may consider hearsay in passing on a motion for summary judgment if the statement could be reduced to admissible evidence/form at trial. <u>Hosea</u>, 2006 WL 314454, *8; <u>Jones,</u> 683 F. 3d at 1293-1294; <u>Macuba</u>, 193 F.3d at 1322. Moreover, Singleton is an agent of the City and Chief Hudson is a party and an agent of the City; thus it is allowable under Rule 801(d)(2). <u>See</u> *supra* note 5.

28: Howard has personal knowledge of her case and her appeal (including her appellate fee) and is entitled to her opinion as to how her appeal was handled, so the Defendants' objection is overruled.

29: Howard has personal knowledge of her injuries and facts regarding her grandson are based on her personal knowledge and are relevant to the circumstances of her excessive force claim, so the Defendants' objection is overruled. As to the cause of her injury being "*due to* Chief Hudson's assault on me" this speaks to causation and arguing her case,

which is essentially a legal conclusion and as such, the Defendants' objection is sustained to that portion of the paragraph.

## III.    **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c). Defendants, as the parties seeking summary judgment, bear the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## IV.  Chief Hudson

### A.  Count 1: Section 1983 Excessive Force, Assault, Battery[6]

Howard alleges that Chief Hudson violated her Fourth, Fifth, and Fourteenth Amendment rights to be free from excessive force, assault, and battery under Section 1983.

#### 1.  Official Capacity

As to Howard's official capacity claim against Chief Hudson, "[a] claim asserted against an individual in his … official capacity is … a suit against the entity that employs the individual." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009).  See also *Penley v. Eslinger*, 605 F.3d 843, 855 (11th Cir. 2010) (such suits are "only another way of pleading an action against an entity of which an officer is an agent[]")).  Thus, Howard's official capacity claim lacks merit as the City has been sued directly.  *Kentucky v. Graham*, 473 U.S. 159, 165-166 and 167 at note 14 (1985).  Thus, Defendants' motion on this claim is **GRANTED**.

---

6 The complaint asserts state law and § 1983 as the basis of its assault and battery claims. However, the court will consider the assault and battery claim as excessive force when analyzing liability under § 1983.

### 2. Fifth Amendment

Howard's Fifth Amendment claim against the Chief Hudson lacks merit because he was a municipal not federal actor, and the Fifth Amendment restricts the activity of the federal government. Bartkus v. State of Illinois, 359 U.S. 121, 124 (1959) (stating that the Fifth Amendment's due process clause applies only to the federal government); Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1041 (11th Cir. 1989) (providing that the Fifth Amendment "restrains the federal government[]"); Hardy v. Town of Hayneville, 50 F. Supp.2d 1176, 1186 (M.D. Ala. 1999) (discussing the necessity of being a federal actor for this claim). As such, Defendants' motion on this claim is **GRANTED.**

### 3. Fourteenth Amendment: Substantive Due Process

Howard's Fourteenth Amendment claim is unclear.[7]  Nevertheless, "*Graham* foreclosed the use of substantive due process analysis in claims involving the use of excessive force in effecting an arrest and held that such claims are governed *solely* by the Fourth Amendment's prohibitions against 'unreasonable' seizures, because the Fourth Amendment provided the explicit source of constitutional protection against such conduct.  490 U.S. at 394–395, 109 S.Ct. 1865."  *Chavez v. Martinez* (2003) 538 U.S. 760, 773 at note 5 (2003) (emphasis in original).  As such, Defendants' motion on this claim is **GRANTED.**

---

7 West v. Davis, 767 F.3d 1063, 1067 (11th Cir. 2014): "[u]nder substantive due process, the question would be whether … [Chief Hudson's] use of force shocks the conscience, a more onerous standard of proof than under the Fourth Amendment. *Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir.2009)*."

## 4.     **Fourth Amendment**

As to Howard's excessive force claim under the Fourth Amendment[8] pursuant to Section 1983, Section 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).     Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To prevail in such an action a plaintiff must make a *prima facie* showing: 1) the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and 2) the act or omission was done by a person acting under color of law. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993); *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992).

Chief Hudson contends that he is entitled to qualified immunity with regard to Howard's Section 1983 claims against him.  Qualified immunity shields public officials acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established statutory or constitutional rights.  Pearson v. Callahan, 555 U.S. 223 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Autery v. Davis, 355 Fed. Appx. 253, 256 (11th Cir. 2009); Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation...protecting from suit all but the

---

8 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The initial inquiry is whether the public official "prove[s] that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred," Lee, 284 F.3d at 1194, by establishing that "the government employee was (a) pursuing a legitimate job-related function (…pursuing a job-related goal), (b) through means that were in his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). "Once the defendant establishes … his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. From there, the qualified immunity determination is comprised of a multi-part test. Courts determine: 1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights; and 2) whether the right at issue was clearly established at the time of the constitutional violation. Harlow, 457 U.S. at 818. It is within a court's discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 235-236 (referencing the Saucier v. Katz, 533 U.S. 194 (2001) analysis).

Here, there is no dispute as to whether Chief Hudson was acting within the scope of his discretionary authority during the relevant time period. As such, the burden shifts to Howard such that she must demonstrate: 1) whether the facts, taken in the light most favorable to her, show that Chief Hudson's conduct violated her constitutional rights; and 2) whether the right at issue was clearly established at the time of the constitutional violation. Harlow, 457 U.S. at 818; Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010)).

The Eleventh Circuit has given "clear notice to a reasonable officer that excessive force used without justification" is unconstitutional. Mills v. Parker, 379 Fed. Appx. 852, 854 (11th

Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 230-233, 235-236 (2009)). See also Payton v. City of Florence, Ala., 413 Fed. Appx. 126, 133 (11th Cir. 2011) (conduct of officer, as described by plaintiff, was clearly a violation of the Constitution). Thus, the Court turns to whether Howard has suffered evidence of unjustified force by Chief Hudson.

In considering Howard's burden, the Court notes as follows. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197. "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008). However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Lee, 284 F.3d at 1197. Nevertheless, "while some force is permitted in effecting an arrest, whether the force is reasonable depends on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Brown v. City of Huntsville, Ala., 608 F.3d 724, 737-738 (11th Cir. 2010). As such, the Fourth Amendment's "objective reasonableness" standard governs whether a use of force is excessive which includes assessing: the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously or sadistically. Hadley, 526 F.3d at 1329.

As stated in Brown: "[a] law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive….[it] must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight.'…We judge use of force solely on an objective basis, and we do not consider an officer's subjective belief." Brown, 608 F.3d at 738. See also Graham v. Connor, 490 U.S. 386, 396-397 (1989) (citations omitted); Hamilton v. City of Jackson, Ala., 261 Fed. Appx. 182, 185 (11th Cir. 2008). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205 (2001), *overruled in part*, Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). The standard "looks to the need for force, the amount of force used, and the injury inflicted." Jones v. City of Dothan, Ala., 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam). Courts also account "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-397. While suspects have a right to be free from force that is excessive, they are not protected against force that is "necessary in the situation at hand." Lee, 284 F.3d at 1197.

Moreover, to balance the necessity of use of force against the arrestee's constitutional rights, the reasonableness test is not mechanically applied, but instead "requires careful attention to the facts and circumstances of each particular case" by consideration of the "Graham factors:" 1) the severity of the crime; 2) whether the suspect posed an immediate threat to the safety of the officers or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. See, e.g., Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002). See also Borton v. City of Dothan, 2010 WL 3328361, *7 (M.D. Ala. Aug. 24, 2010).

The parties significantly dispute what transpired between Chief Hudson and Howard on May 8, 2012. Defendants contend that Chief Hudson did not use excessive force. Chief Hudson

disputes that he pushed Howard in his office and claims that while trying to arrest her, he "barely held" on to her arm so as "to not let go[]" as he tried to lead her through the building to effect the arrest, except for when she pulled him to the ground and fell with him landing on her and putting pressure on her stomach -- but that during the incident she was violent, aggressive, screaming, threatening him, cursing, trying to bite him, and resisting arrest.[9] As detailed *supra* Section I, according to Howard's version of events *which this Court is bound to follow on summary*

---

[9] According to Defendants, the firearm Robinson brought to the police station was not the one he had discharged, but instead, was a "b-b" gun. (Doc. 31-2 (Aff. Hudson); Doc. 31-3 (Aff. Hamilton); Doc. 31-4 (Aff. Lyles)). Chief Willie Hudson ("Chief Hudson"),[9] while meeting with Robinson, Howard and Howard's brother, explained that Robinson's bond would be revoked and he would be placed in jail unless he brought in the discharged firearm. (Id.) Howard's brother then stated he was leaving and Chief Hudson rose from his seat along with Howard's brother, to continue the conversation as he left. (Id.) However, at that point, Howard stood up and forced herself between them, obstructing Chief Hudson's path. (Doc. 31-9 (Dep. Howard at 287)). Chief Hudson may have touched Howard slightly in an effort to move around her. (Doc. 31-2 (Aff. Hudson)). Assistant Chief Michael Hamilton ("Hamilton"), who was also present, states that Chief Hudson placed his hands on Howard slightly, to move around her. (Doc. 31-3 (Aff. Hamilton)). At this time, Officer Eugene Lyles ("Lyles") and Robinson walked out the back of the police station and Hamilton escorted Robinson's son (also present) out the same door. (Doc. 31-2 (Aff. Hudson); Doc. 31-3 (Aff. Hamilton); Doc. 31-4 (Aff. Lyles)). While Howard's brother was leaving, Chief Hudson instructed Lyles to place Robinson under arrest as no one had any intention of providing the discharged firearm. (Id.) Then, with everyone standing outside the police station, Howard exclaimed that Robinson was not going to be arrested and that they were going home. (Doc. 31-2 (Aff. Hudson); (Doc. 31-5 (Aff. Singleton)).

Chief Hudson instructed Howard -- who had started yelling at him inches from his face -- to sit down and calm down, giving her several opportunities to do so. (Doc. 31-2 (Aff. Hudson); (Doc. 31-5 (Aff. Singleton); Doc. 31-6 (Aff. Wilson)). She did not, so he placed Howard under arrest, taking Howard by one arm and leading her to the front of and through the city hall building (he lacked handcuffs). (Id.) Howard started screaming wildly, directing profanity and threats to Chief Hudson, as well as trying to hit and bite him and escape his grasp – strenuously resisting arrest. (Id.; Doc. 31-7 (Aff. Cook); Doc. 31-9 (Dep. Howard at 258)). Howard exclaimed that she was going to "beat his ass[]," "fuck him up," "bust him in the face" and "kill him." (Doc. 31-2 (Aff. Hudson); (Doc. 31-5 (Aff. Singleton); Doc. 31-7 (Aff. Cook); Doc. 31-8 (Aff. Williams); Doc. 31-11). Howard, in this state, knocked objects off of the desks in the City Clerk's office, lost her balance, and fell to the floor bringing Chief Hudson, who was holding her, down with her. (Doc. 31-2 (Aff. Hudson); Doc. 31-3 (Aff. Hamilton); Doc. 31-4 (Aff. Lyles); Doc. 31-5 (Aff. Singleton); Doc. 31-6 (Aff. Wilson); Doc. 31-7 (Aff. Cook); Doc. 31-9 (Dep. Howard at 267)). After the fall, Chief Hudson held on to Howard to "keep hold of her until assistance arrived and only used the minimal force necessary to do so." (Doc. 31-2 (Aff. Hudson)). Chief Hudson asserts that he never pushed, hit, kicked, punched or struck Howard, but simply held on to her arm to prevent her from fleeing while he waited for assistance to place her under arrest and subdue her violent and aggressive behavior. (Id.) One witness asserts that Chief Hudson did not hit or attempt to hit Howard and he did not see Chief Hudson even touch her until after he told her she was under arrest: "[t]he only force he used was holding her arm as he led her down the hall while she was continuing to thrash about and to try to pull away from him." (Doc. 31-6 (Aff. Wilson)). Alarmed at Howard's behavior, a City employee witnessing the event called 911 as other officers were not in the building. (Doc. 31-5 (Aff. Singleton); Doc. 31-9 (Dep. Howard at 125)). In response, Deputy Enoch Rose ("Rose") arrived and arrested Howard, placing her in handcuffs and transporting her to the jail where she booked and placed in a holding cell. (Doc. 31-2 (Aff. Hudson); Doc. 31-3 (Aff. Hamilton); Doc. 31-4 (Aff. Lyles); Doc. 31-5 (Aff. Singleton); Doc. 31-7 (Aff. Cook); Doc. 31-9 (Dep. Howard at 125, 131, 134)). See also (Doc. 31-8 (Aff. Williams)).

*judgment:* an unprovoked Chief Hudson assaulted and battered Howard by repeatedly grabbing/twisting her arm, pushing her twice on the shoulders with such force that she and her two (2) year old grandson fell to the ground, falling on her after painfully dragging her by the arm through the police station, causing her to knock her head into a computer and a desk in city hall making her lose her balance, telling her he was going to taser her, and making her think he might shoot her. Moreover, according to Howard, all this transpired while she was a non-dangerous, non-resisting subject, before she was told she was under arrest (so could not have been actively resisting arrest or attempting to evade arrest), when she was not an immediate threat to the safety of officers/others, and for an arrest for a minor offense (disorderly conduct).[10]

With Howard's version, a reasonable jury could find that this type of conduct, if occurred, would be a constitutional violation of Howard's right to be free from excessive force. With Chief Hudson's version, a jury could find this conduct, if occurred, objectively reasonable and thus, not a violation of Howard's constitutional rights. While a law enforcement officer's right to arrest carries with it the ability to use *some* force in making an arrest, <u>Lee</u>, 284 F.3d at 1197-1198, here there is a vigorous dispute as to *the amount* and *level/severity of force* used by Chief Hudson and even whether he was making an arrest when the physical contact began.

These dramatically differing versions of events underscore the existence of a genuine issues of material fact, and Howard's version is based on her "first-hand personal knowledge, not [her] subjective beliefs" which "directly contradict the officers' assertions." <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1253 (11th Cir. 2013) (noting that such "contradiction presents a

---

10 <u>Fils</u>, 647 F.3d at 1288-1289: "Disorderly conduct is not a serious offense … Similarly, resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force….unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment."

classic swearing match, which is the stuff of which jury trials are made[]"). <u>See also</u> <u>Ramirez v.</u> <u>James</u>, 2012 WL 5511045, *3 (N.D. Ala. Oct. 19, 2012) (noting that summary judgment is not the procedure to resolve swearing matches between parties in excessive force claims as such instead "calls for the fact-finder to examine several factors, including the need for the application of force, the amount of force used in relation to the need, the restraint used in the application of force, and the extent of injuries suffered[]"). And even if a district court believes that evidence presented by one side is of "doubtful veracity," it is not proper to grant summary judgment on the basis of credibility choices. <u>Feliciano</u>, 707 F.3d at 1252. The credibility of Chief Hudson's or Howard's version of events and the weighing of evidence are matters for a jury, not the undersigned. Thus, Defendants' motion on this claim is **DENIED**.

**B.**     **Count 1: State Law Assault and Battery**

Howard alleges a state law claim for assault and battery against Chief Hudson. In Alabama, the elements of an assault and battery claim are:

> "'[A]n intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented.'" …. A successful assault becomes a battery, which consists of the touching of another in a hostile manner.

<u>Wright v. Wright</u>, 654 So.2d 542, 544 (Ala. 1995). In a civil case, the elements of battery are: 1) that the defendant touched the plaintiff; 2) that the defendant intended to touch the plaintiff; and 3) that the touching was conducted in a harmful or offensive manner. <u>Ex parte Atmore</u> <u>Community Hosp.</u>, 719 So.2d 1190, 1193 (Ala. 1998). Additionally, "[a] battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another." <u>Surrency v.</u>

Harbison, 489 So.2d 1097, 1104 (Ala. 1986). See also Perkins v. City of Creola, 2010 WL 1960915, *18 (S.D. Ala. May 14, 2010) (same).

Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." Ex parte Hayles, 852 So.2d 117, 122 (Ala. 2002). Alabama's state-agent immunity doctrine bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000).[11] Indeed, the test for state-agent immunity is set forth in Cranman, as modified in Hollis v. City of Brighton, 950 So.2d 300 (Ala. 2006). See, e.g., Suttles v. Roy, 2010 WL 2034827, *3-4 (Ala. May 21, 2010) (explaining same). Under Cranman, state-agent immunity is subject to a burden-shifting framework. The police officer bears the burden of demonstrating that the plaintiff's claims arise from a function that would give rise to immunity. Brown, 608 F.3d at 741. When the police officer has shown this, the burden shifts to the plaintiff to show that the police officer "'acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.'" Id.

Alabama Code § 6-5-338(a) provides that "every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Cranman elaborated as follows: "[a] State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's .. exercising

---

11 The Alabama Supreme Court formally adopted the Cranman plurality's state-agent immunity test in Ex parte Butts, 775 So.2d 173, 177-78 (Ala. 2000).

judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons...." 792 So.2d at 405 (emphasis in original). To constitute a "discretionary function," the defendant must have had at least arguable probable cause to arrest. *Compare* <u>Borders v. City of Huntsville</u>, 875 So.2d 1168, 1179-1180, 1181 (Ala. 2003) (not entitled to discretionary immunity) *with* <u>Wood v.</u> <u>Kesler</u>, 323 F.3d 872, 883 (11th Cir. 2003) (entitled to discretionary immunity).

As noted *supra*, Chief Hudson was acting within the scope of his discretionary function. Whether Chief Hudson acted willfully, maliciously, fraudulently, or in bad faith is a matter of dispute to be decided by a jury. Accordingly, Defendants' motion on this claim is **DENIED.**

## C.    <u>Count 1: Section 1983 False Arrest</u>

Howard alleges a Section 1983 claim for false arrest against Chief Hudson, in his individual and official capacities, suggesting that Chief Hudson lacked probable cause to arrest her and those conducted an unlawful arrest (to which Howard was entitled to resist). (Doc. 39 at 11-16). However, following Howard's arrest, she was tried for disorderly conduct and resisting arrest, and was convicted of both charges. While she disagrees with her conviction and claims to have appealed same and that her appeal was essentially blocked, at present, Howard's conviction has not been invalidated. "If [a] plaintiff cannot show that his conviction or sentence has been invalidated, then [s]he is barred from bringing a § 1983 claim for false arrest." *Simpson v. Stewart,* 386 Fed.Appx. 859, 860 (11th Cir.2010) (citing *Heck v. Humphrey,* 512 U.S. 477, 486–487 (1994)). As such, Defendants' motion on this claim is **GRANTED**.

## V.    The City

### A.    Count 2: Section 1983

Howard alleges that the City committed violations of her civil rights under Section 1983: Chief Hudson, while acting under color of law and as an authorized agent of the City, did "intentionally and deliberately assault and batter" her and "caused her to be falsely arrested causing a constitutional deprivation of her right to be free from punishment and to due process of law by the Fourteenth Amendment[.]"  (Doc. 1 at 6): Howard asserts that the City violated her Fourteenth Amendment substantive due process rights by failing to train officers to not assault and batter citizens, and that the constitutional deprivation was caused by the City's lack of training and supervision with regards to officers appropriately interacting with citizens without causing the deprivation of constitutional rights.  (Id. at 6-7)  Howard alleges further that the City "has a history of police actions which conclude with the wrongful detention or physical injury of African-American pretrial detainees. These constitutional violations stem from an express failures of policies and/or widespread customs of City of Greensboro police officers."  (Id. at 7).

The City may be a defendant under Section 1983. Municipalities and other local government entities are considered "persons" for the purposes of the statute and may be subject to liability. *Monell v. Dept. of Social Services of N.Y. City,* 436 U.S. 658 (1978).  Howard essentially claims that she suffered a constitutional injury that was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." However, Howard cannot rely solely upon the theory of *respondeat superior* to hold the City liable for Chief Hudson's actions. Blunt v. Tomlinson, 2009 WL 921093, *5 (S.D. Ala. Apr. 1, 2009); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Rather, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that [her] constitutional rights were

violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation[]"). McDowell, 392 F.3d at 1289.[12] As set forth in *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, FL,* 637 F.3d 1178, 1187 (11th Cir. 2011):

> …A court's first inquiry in assessing municipal liability is whether there is a direct causal link between a municipal policy and the alleged constitutional injury. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation." *Cuesta v. Sch. Bd. of Miami–Dade Co.,* 285 F.3d 962, 967 (11th Cir.2002). The policy must be the "moving force" behind the constitutional injury. *Id.* (quoting *Gilmere v. City of Atlanta,* 737 F.2d 894, 901 (11th Cir.1984)). When a municipal policy itself violates federal law, or directs a municipality to do so, resolving "issues of fault and causation is straightforward." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). But when that is not the case, determining causation is more difficult. *Id.* at 406, 117 S.Ct. 1382. If a facially-lawful municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407, 117 S.Ct. 1382 (quoting *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197).

While alleging that her constitutional rights were violated, Howard has not presented sufficient evidence of much else. The entirety of Howard's evidence to support her Section 1983 claim against the City consists of six (6) pages of Polion's deposition – to assert that Chief Hudson's propensity for unnecessary violence against the citizens of Greensboro was well known by the Mayor and other elected officials. (Doc. 39 at 22-25). Per Howard, the City was on notice of Chief Hudson's violent tendencies yet took no corrective action, instead letting Chief Hudson continue to physically attack its citizens. However, as already detailed *supra*, that portion of Polion's deposition does not support such a sweeping and conclusory claim by

---

12 "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.... A custom is a practice that is so settled and permanent that it takes on the force of law." Mingo v. City of Mobile, Ala., 2013 WL 6094674, *9 (S.D. Ala. Nov. 20, 2013) (citations omitted).

Howard, establish that Greensboro had a policy or custom of violating its citizens' constitutional rights, or that the Mayor and elected officials had notice of a need to train or supervise Chief Hudson. Also, Polion's deposition is insufficient to establish notice on the part of the City that additional training was needed in a specific area relevant to the facts of this case. Moreover, Howard has not submitted any evidence that establishes an alleged inadequacy in the City's training program. In sum, Howard has failed to submit sufficient evidence to support her Section 1983 claim against the City. As such, Defendants' motion is **GRANTED** as to this claim.

## B. Counts 3-5: State Law Claims for Negligence

Howard alleges state law claims against the City for negligent training, supervision, and retention. Specifically, Howard alleges that the City negligently, wantonly, or consciously failed to train and supervise its police officers in proper treatment of its citizens while "knowing that they had caused injuries in the past by using excessive force to effectuate arrest and for falsely arresting citizens[]," that from failing to properly train and supervise its officers, injury would likely or probably result, and this failure proximately caused great physical injury to her. (Doc. 1 at 7-9). Additionally, for negligent retention Howard alleges that the City had a duty to discharge Chief Hudson who had in the past improperly violated the rights of the City's citizens by use of excessive force and false arrest, but negligently or wantonly or consciously failed to discharge him and so violated Howard's constitutional rights, doing so "knowing that they had caused injuries in the past by using excessive force to effectuate arrest and for falsely arresting citizens[]," and this failure proximately caused great physical injury to Howard. (Id. at 9-10).

However, on summary judgment Howard failed to present any evidence of the City's negligent training, supervision, and/or retention. In fact, Howard *fails to even address these claims* in response to Defendants' motion, indicating abandonment of same. See, e.g., Howard v.

26

City of Demopolis, Ala., 984 F. Supp. 2d 1245, 1252 and 1260 (S.D. Ala. 2013) (finding similarly with regard to negligence claims against the City of Demopolis).[13]  Regardless, Howard failed to allege or identify, in the Complaint, the existence of a municipal policy or custom that allegedly caused her injuries.  Instead, Howard simply alleges in conclusory fashion (*and in a separate count*) that there are "express failures of policies and/or widespread customs" of City officers.  (Doc. 1 at 7).  Additionally, Howard failed to present any evidence that the City is not protected by immunity, much less affirmative proof that Chief Hudson's *alleged* incompetence was known by the City. As such, Defendants' motion on this claim is **GRANTED**.

## VI.    Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (Docs. 30-33) is **GRANTED in part** and **DENIED in part,** and the Defendants' Objections (Docs. 43-44) are **OVERRULED in part** and **SUSTAINED in part,** as set forth herein.[14]

**DONE** and **ORDERED** this the **30th** day of **October 2014.**

> /s/ Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**

---

13  See also e.g., *Edmondson v. Bd. of Trustees of Univ. of Ala.,* 258 Fed.Appx. 250, 253 (11th Cir.2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment …. the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned[]"); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.,* 182 F.3d 888, 892 (Fed.Cir.1999) (It could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment, explaining that where plaintiff failed to address a claim in its opposition to defendant's motion and "did not raise the theory in its own motion for summary judgment," the Eleventh Circuit properly treated the claim as abandoned).

14  In so finding, Howard's request for oral argument is **DENIED**.